## SECOND DEPARTMENT, NOVEMBER, 1973

### (November 1, 1973)

In the Matter of I. STANLEY ROSENTHAL, Appellant, v. STANLEY HARWOOD, as Chairman of the Nassau County Democratic Committee, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR (1) to annul respondents' censure of appellant for refusing to decline a designation of him by the Conservative Party of Nassau County as its candidate in the General Election to be held on November 6, 1973 for the public office of Judge of the County Court of Nassau County, (2) to enjoin respondents from taking any action in furtherance of said censure and (3) to declare a certain by-law of the Nassau County Democratic Committee inapplicable to candidates for judicial office, in which proceeding respondents cross-moved to dismiss the petition upon an objection in point of law, the appeal is from a judgment of the Supreme Court, Nassau County, entered October 5, 1973, which dismissed the petition on the merits. Judgment reversed, on the law, without costs; petition granted to the extent of declaring that the by-law of the Nassau County Democratic Committee designated as subdivision (f) of section 1 of article VII is invalid and unenforceable with respect to candidates for judicial office; and petition dismissed on the merits in all other respects. Petitioner is presently a Judge of the District Court of Nassau County and enrolled in the Democratic Party. He was nominated by that party for the office of Judge of the County Court of Nassau County. He was nominated for the same office by the Conservative Party. He was then censured by respondents for accepting the nomination of the Conservative Party. The censure was based on the provision of the by-laws of the Democratic County Committee reading as follows: " (f). Designations or nominations shall be made only of persons who shall have agreed in writing, duly acknowledged, to refuse to accept the designation or nomination of any other political party or independent party or body; except that a candidate nominated for the judiciary may accept a Republican nomination." Special Term, treating the proceeding as an action for a declaratory judgment, dismissed the petition, holding that there was no justiciable controversy and that the courts may not interfere with the internal operations of a political party. Though we agree that the censure of petitioner cannot be eradicated and that respondents may not be restrained from taking such action as they may be

advised with respect to petitioner's candidacy, we believe that the quoted by-law is invalid and unenforceable against petitioner as a candidate for judicial office. After the making of the determination of Special Term, and on October 16, 1973, the Court of Appeals decided that section 138-b of the Election Law (L. 1971, ch. 1179, § 1) is unconstitutional (*Matter of Devane* v. *Touhey*, 33 N Y 2d 48). That section reads in part as follows: " Any candidate who has received and accepted the nomination of a party, for an office other than judicial or state-wide shall not be eligible to receive the nomination of any independent group for the same office for the same year." The by-law challenged by appellant is basically similar to section 138-b. Though the section refers expressly to inde-pendent groups and the by-law refers expressly to political parties other than the Republican Party, the intent of both the statute and the by-law, when read together, is to prevent candidates of the Democratic Party from appearing on any other line than the Republican line. The rationale of *Matter of Devane* v. *Touhey* (*supra*), that both the right of franchise exercisable by the voter and the right of a candidate to appear on more than one line on the ballot are uncon-stitutionally impaired, applies as strongly to the by-law as it does to° the statute. It is, of course, the rule that by-laws of political parties may not be inconsistent with the Election Law (Election Law, § 15, subd. 2; cf. *Blaikie* v. *Knott*, 277 App. Div. 461; *Matter of Daniel*, 149 App. Div. 777). It may be remarked, in passing, that a three-Judge court in the Southern District of New York had come to the same conclusion as the Court of Appeals concerning section 138-b (*United Ossining Party* v. *Hayduk*, 357 F. Supp. 962). We are not unaware of *Matter of Yevoli* v. *Cristenfeld* (29 N Y 2d 591), which held the by-law constitutionally valid. However, we consider that *Matter of Devane* v. *Touhey* (*supra*) overrules *Yevoli*. In any event, the Court of Appeals in *Matter of Donovan* v. *Board of Elections* (29 N Y 2d 725, 726) disapproved the practice embodied in the by-law with respect to judicial candidates, saying that " political organization leaders ought not to exact a promise of party loyalty from can-didates for judicial office as a condition of support, and such candidates should not make these promises." Here, even though the party leaders did not demand a pledge of loyalty from appellant as a condition of their support, they censured him for accepting the nomination of the Conservative Party. They thus effec-tively accomplished indirectly what the Court of Appeals said should not be done. The admonition of the Court of Appeals followed the fundamental con-cept that a judicial candidate is under the strictures of judicial ethics (cf. American Bar Assn. proposed Code of Judicial Conduct [Final Draft], canon 7; see, also, Opinions No. 271 [Nov. 17, 1972, 45 N. Y. State Bar J., p. 132], No. 250 [May 24, 1972, 44 N. Y. State Bar J., p. 424] of the New York Bar Association Committee on Professional Ethics; cf. 22 NYCRR 20.4 [Rules of the Administrative Board]). Hence, we declare the by-law to be invalid and unconstitutional. We reverse the judgment and grant the petition to that extent only. Rabin, P. J., Hopkins and Martuscello, JJ., concur; Munder, J., dissents and votes to affirm, with the following memorandum, in which Latham, J., concurs: In my opinion, the recent decision of the Court of Appeals in *Matter of Devane* v. *Touhey* (33 N Y 2d 48), striking down section 138-b of the Election Law, does not compel a similar result here. Not only does the decision fail to mention either *Matter of Yevoli* v. *Cristenfeld* (29 N Y 2d 591) or *Matter of Donovan* v. *Board of Elections* (29 N Y 2d 725), even in passing, but, more importantly, its reasoning is actually supportive of the validity of the party by-law here challenged. The *Devane* holding is very simply that section 138-b represents a denial of equal protection insofar as it gives certain can-didates an advantage over other candidates for the same office. More specif-

**560**

ically, the section would permit a candidate obtaining the nomination of two parties to have his name appear in two separate rows or columns on the ballot, but prohibit another candidate for the same office, having the nomination of only one party (or independent group), from accepting the nomination of an independent group (or party) and thereby also gaining a second line on the ballot. The case at bar involves no such discrimination. Furthermore, the Court of Appeals placed great reliance upon the decision in *Matter of Callahan* (200 N. Y. 59). *Callahan* held unconstitutional a provision of the Election Law remarkably similar to the party by-law here involved. The Legislature had, in effect, enacted a cross-indorsement ban, prohibiting the committee of any party or independent body, authorized to make nominations or to fill vacancies, from nominating a candidate of another party or independent body for the same office. The court held such ban unconstitutional on the grounds that the electors could not be so limited in their choice of a candidate and that forbidding one party or organization from nominating the candidate of another constituted an arbitrary exclusion from candidacy. In *Yevoli* (*supra*) wherein the constitutionality of this by-law was directly in issue, the majority in this court relied to a great extent on *Callahan* (*supra*), stating that, if it is unconstitutional for the Legislature to prohibit a multi-party candidacy, it is certainly unconstitutional for party committees to seek the same result through their own rules. The dissenters, however, argued that there was a wide constitutional gulf between the Legislature's power to prohibit action by a group and the group's right to voluntarily refrain from the same action and cited portions of the *Callahan* opinion, to the effect that electors are entitled to choose their candidates on whatever principle or dictated by whatever motive they see fit, provided the motives are not criminal, as actually supporting the constitutionality of the by-law. In holding the by-law constitutional, the Court of Appeals adopted the dissenting opinion in this court. In the light of all the above, I am of the view that neither *Callahan* nor *Devane* supports the majority's position herein and that *Yevoli* is still good law. It might also be noted that, contrary to the factual situation in *Donovan,* this petitioner was neither asked to sign a pledge of party loyalty as a condition for receiving the Democratic designation nor denied the nomination when he also accepted the Conservative designation.